In the Matter of JOHN R. BEAUDOIN, as Commissioner of the Rensselaer County Department of Social Services, Appellant, v PHILIP L. TOIA, as Commissioner of the New York State Department of Social Services, et al., Respondents.

Third Department, July 28, 1977

*C. Michael Reger* for appellant.

*Louis J. Lefkowitz, Attorney-General (Clifford A. Royael* and *Jean M. Coon* of counsel), for Phillip A. Toia, respondent.

*Edward V. Loughlin, Jr.,* for Shirley D. Jorczak, respondent.

MAHONEY, J. With the natural mother's consent Shirley Jorczak brought a minor, nine-year-old Tammy Ann Koch, from the Commonwealth of Massachusetts to her home in Castleton, New York, where she resides with her husband and three minor children. On October 1, 1975 Mrs. Jorczak applied to Rensselaer County for public assistance for Tammy. The application was denied and at a fair hearing held in November, 1975 Shirley Jorczak conceded that when she took Tammy from her natural mother in Massachusetts she in-

tended to support her by receiving public assistance from Rensselaer County. In a decision dated January 16, 1976, respondent Toia's predecessor (commissioner) reversed the county's determination and directed the Department of Social Services of Rensselaer County to provide public assistance. Thereafter, Mrs. Jorczak commenced an article 78 proceeding to compel the county agency to abide by the commissioner's determination and the local agency brought an article 78 proceeding seeking to annul that determination. The proceedings were consolidated and Special Term dismissed the county's petition and directed it to comply with the fair hearing decision. This appeal ensued.

Rensselaer County's denial of public assistance was premised on subdivision 1 of section 382 of the Social Services Law, which provides:

"Any person, institution, corporation or agency which shall bring, or cause to be brought, into the state of New York any child not having a state residence, or which shall receive or accept any child from outside of the state of New York, not having state residence, shall be responsible for the care and maintenance of such child whether placed out, boarded out or otherwise cared for unless adopted by foster parents. Such responsibility shall continue during the minority of such child and thereafter until he is self-supporting."

The apparent clarity of the cited subdivision becomes less clear when read in conjunction with subdivision 1 of section 131 of the Social Services Law which provides, in part:

"It shall be the duty of the social services officials, insofar as funds are available for that purpose, to provide adequately for those unable to maintain themselves, in accordance with the requirements of this article and other provisions of this chapter."

Reading the two cited sections *in pari materia* lends support to the respondent commissioner's determination. To deny assistance in reliance upon the literal import of subdivision 1 of section 382 would elevate the obligation on the part of persons who bring a child into this State to provide for the care and maintenance of the child over the duty of social services officials to provide for those unable to maintain themselves. Herein, such a position by the county severely penalizes the infant, Tammy, and it is no answer to say that the child should be returned to Massachusetts where she had been subjected to physical abuse by her stepfather.

Next, the county's contention that subdivision 1 of section 382 compels the denial of assistance, regardless of the motive for bringing Tammy into New York, raises a constitutional issue based on a classification without a rational basis. There would have been no obligation on the Jorczaks if Tammy had been residing in New York rather than Massachusetts. To hold to the contrary because the child was brought across State lines would be tantamount to establishing a residency requirement for those children who travel into this State (cf. *Cordova v Reed,* 521 F2d 621). Thus, it cannot be said that the commissioner's construction of the relevant statutes was irrational or unreasonable.

However, the peculiar facts herein compel a closer examination of the subject statutes to determine if the liberal social services laws and regulations of New York are not being construed in a manner inapposite to their intent. While we recognize and condone the philosophical thrust of our social legislation that imposes responsibility on local social services districts to provide assistance and care for any person in its territory who is in need (Social Services Law, § 62, subd 1; § 131, subd 1) including those, like Tammy, who are unable to secure support from a legally responsible relative (Social Services Law, § 101), we do not accept the view that every person, including every child, is automatically a ward of the State for the purposes of maintenance merely upon a bare showing of need. Where, as here, the surrogate parents are both employed and able to provide for the infant, albeit, at a cost of a reduced family economic level, the local agency should not be compelled to maintain the higher level under the guise of furnishing support to the child. Surrogate parenthood is no less demanding than normal parenthood merely because it is assumed. Those who voluntarily assume that posture must be prepared to accept the concomitant responsibilities, especially as here, where the economic means are available to do so. Since the respondent Shirley Jorczak candidly admitted at oral argument that Tammy has been returned to her natural mother and stepfather in Massachusetts and she is now only seeking the dollar amount of the assistance withheld by the local agency while Tammy resided in Rensselaer County, we must infer that the protection extended to Tammy from an allegedly errant stepfather is only available if the county pays for the child's support. To affirm an obligation on the part of the county to do so would

be to interpret the appropriate sections of the Social Services Law so as to provide a solution to a domestic problem rather than, as intended, to alleviate the economic need of a child.

Therefore, we conclude that while the commissioner's construction of the apparent conflict between section 382 (subd 1) and section 131 (sub 1) of the Social Services Law is, in the abstract, rational and, therefore, deserving of support, we nevertheless, under the facts of this case, find that determination at variance with the legislative intent to provide assistance for those eligible for such aid.

The judgment should be reversed, on the law and the facts, without costs.

KOREMAN, P. J., SWEENEY, LARKIN and HERLIHY, JJ., concur.

Judgment reversed, on the law and the facts, without costs.